STATE OF NORTH CAROLINA v. DIANA PERSON

No. 36

(Filed 4 December 1979)

**1. Burglary and Unlawful Breakings § 1— first degree burglary—elements**

The constituent elements of burglary in the first degree are the breaking and entering in the nighttime into a dwelling house or a room used as a sleeping apartment which is actually occupied at the time of the offense with the intent to commit a felony therein.

**2. Burglary and Unlawful Breakings § 5.1— first degree burglary—defendant as perpetrator—sufficiency of evidence**

In a prosecution for first degree burglary the evidence as to the identity of defendant as the burglar was sufficient to carry the case to the jury where it tended to show that the victims were awakened by the presence of a woman in their bedroom; she was carrying their jewelry box and fled when they awakened; within fifteen minutes defendant was seen standing across the street from the victims' house; defendant was wearing the same clothing as the intruder; defendant's purse was found in the victims' living room; one victim's knife had been taken from his pants pocket by the intruder and was found with one of defendant's shoes in a ditch near the house; defendant's other shoe was found at the point where she was standing when discovered; and the jewelry box was found on the porch with jewelry scattered in the yard.

**3. Criminal Law § 97— reopening case—pocketbook admitted—opportunity to offer rebuttal evidence**

Defendant in a first degree burglary prosecution was not prejudiced where the court permitted the State to reopen the case and offer into evidence defendant's pocketbook found in the victims' living room, and defendant was not denied the opportunity of introducing rebuttal evidence where failure to introduce the pocketbook before resting was a mere inadvertence on the part of the prosecution; witnesses had already identified the pocketbook and defendant could have cross-examined them; and defendant could have introduced rebuttal evidence had she informed the court of any desire to do so, but defense counsel admitted that defendant had no rebuttal evidence to offer.

**4. Criminal Law § 131.2— knife in defendant's pocketbook—newly discovered evidence—new trial denied**

In a prosecution for first degree burglary where defendant's pocketbook, which was found in the victims' living room, was introduced into evidence, defendant was not entitled to a new trial on the ground of newly discovered evidence because defense counsel, during closing arguments, discovered a large knife inside the pocketbook, since the jury never saw the knife and never knew it existed; defendant did not show that the knife was material, competent or relevant; defendant did not show that the knife was not merely corroborative of other testimony; defendant did not show that due diligence

was used and proper means were employed to examine the contents of defendant's pocketbook prior to trial; and defendant did not show that evidence concerning the knife was of such nature that a different result would probably be reached at a new trial.

DEFENDANT appeals from judgment of *Smith (David), S.J.*, entered at the 4 December 1978 Session of FRANKLIN Superior Court.

Defendant was tried upon a bill of indictment proper in form charging her with first degree burglary.

The State's evidence tends to show that Sonny Quesinberry and wife Margaret live on Cross Street in Youngsville, North Carolina. On the evening of 1 September 1978 they retired at approximately 10 p.m. at 5:45 the next morning, 2 September 1978, they were awakened by a noise in their bedroom. A strange woman was standing at the foot of their bed with their jewelry box in her arms. She was wearing slacks, a white blouse and a bandana around her head. The Quesinberrys could not see her face. The woman fled when Mr. Quesinberry jumped out of bed and turned on the light. He then went outside and found the jewelry box lying on the porch and jewelry scattered in the yard. The intruder was nowhere in sight. He went inside and called the police.

The Quesinberrys determined that the only items missing from their house were the jewelry box, the jewelry, an envelope containing money, and a pocketknife taken from Mr. Quesinberry's pants pocket.

Police officers arrived about 5:55 a.m. Officer Gilliam testified it was completely dark when he arrived. He and Mr. Quesinberry drove around the block looking for the intruder. As they completed the drive and turned into the Quesinberry driveway, the headlights reflected on defendant standing across the street from the Quesinberry house. She was wearing slacks, a white blouse and a bandana around her head. She walked across the street and informed Officer Gilliam that her pocketbook had been stolen. Mrs. Quesinberry found a pocketbook in her living room, and defendant identified it as her own. Officer Gilliam found a woman's shoe in a ditch across the street together with a pocketknife. Defendant identified the shoe as belonging to her,

and Mr. Quesinberry identified the pocketknife as belonging to him. Officer Gilliam found a second shoe at the spot where defendant had first been standing, and she identified that shoe as hers.

At trial, Mrs. Quesinberry identified defendant as the person first seen in the Quesinberry bedroom, basing her identity on defendant's shape, the color of her clothing, what she was wearing and the fact that her hair was wrapped in a bandana. Mr. Quesinberry identified her as the burglar and based his identity upon her dress, the presence of her pocketbook in the Quesinberry living room, and the fact that his pocketknife was found in the ditch with one of defendant's shoes.

The State's evidence further tends to show that when the Quesinberrys went to bed on the night of 1 September 1978, all outside doors were shut and all of them, except the side porch door, were locked. When they awoke, the side porch door was standing open.

When taken into custody, defendant told the officers she had been thrown out of a car and the people in the car had stolen her pocketbook. She consistently denied entering the Quesinberry home but could not, or would not, give any description of the vehicle from which she was thrown or of her companions. She offered no evidence at trial.

The jury convicted defendant of first degree burglary and she was sentenced to life imprisonment. Her appeal to this Court preserves and poses for decision the questions discussed in the opinion.

*Rufus L. Edmisten, Attorney General, by Jane Rankin Thompson, Assistant Attorney General, for the State.*

*Thomas F. East and Larry E. Norman, attorneys for defendant appellant.*

HUSKINS, Justice.

Defendant's first assignment of error is based on denial of her motion for judgment of nonsuit at the close of all the evidence. She contends the State's evidence as to the identity of defendant as the burglar was insufficient to carry the case to the jury.

[1] The constituent elements of burglary in the first degree are: (1) the breaking (2) and entering (3) in the nighttime (4) into a dwelling house or a room used as a sleeping apartment (5) which is actually occupied at the time of the offense (6) with the intent to commit a felony therein. *State v. Wells*, 290 N.C. 485, 226 S.E. 2d 325 (1976); *State v. Davis*, 282 N.C. 107, 191 S.E. 2d 664 (1972). There is ample evidence in this case to support an affirmative finding as to each of these elements. Thus the intruder, whoever she was, is guilty of first degree burglary. *State v. Sweezy*, 291 N.C. 366, 230 S.E. 2d 524 (1976); *State v. Wilson*, 289 N.C. 531, 223 S.E. 2d 311 (1976); *State v. Bell*, 285 N.C. 746, 208 S.E. 2d 506 (1974). Is the evidence sufficient on the question of identity to support the verdict against this defendant? We think so.

[2] Although the Quesinberrys could not see the intruder's face, the testimony, taken in the light most favorable to the State, tends to show that they were awakened by the presence of a woman in their bedroom; that she was carrying their jewelry box and fled when they awakened; that within fifteen minutes defendant was seen standing across the street from the Quesinberry house; that defendant was wearing the same clothing as the intruder; that defendant's pocketbook was found in the Quesinberry living room; that Mr. Quesinberry's knife had been taken from his pants pocket by the intruder and was found with one of defendant's shoes in a ditch near the house; that defendant's other shoe was found at the point where she was standing when discovered; and the jewelry box was found on the porch with jewelry scattered into the yard. This evidence, unexplained, points unerringly to defendant as the burglar and is sufficient to carry the case to the jury. *Compare State v. Tippett*, 270 N.C. 588, 155 S.E. 2d 269 (1967). Defendant's motion for nonsuit was properly denied.

[3] After the State had rested its case and defendant's motion for judgment of nonsuit had been denied, the court permitted the State to reopen the case and offer into evidence the pocketbook found in the Quesinberry living room. After arguments of counsel and jury instructions, the jury returned its verdict of guilty of first degree burglary on 4 December 1978, and judgment was pronounced. On 7 December 1978, defendant filed a motion for appropriate relief pursuant to G.S. 15A-1414, alleging error in allowing introduction of the pocketbook, after the close of all the evidence, "without permitting the defendant the opportunity to

introduce any rebuttal evidence" in violation of G.S. 15A-1226(a). This constitutes defendant's second assignment of error and requires examination of the statutes cited.

G.S. 15A-1226 reads as follows:

"(a) Each party has the right to introduce rebuttal evidence concerning matters elicited in the evidence in chief of another party. The judge may permit a party to offer new evidence during rebuttal which could have been offered in the party's case in chief or during a previous rebuttal, but if new evidence is allowed, the other party must be permitted further rebuttal.

(b) The judge in his discretion may permit any party to introduce additional evidence at any time prior to verdict."

G.S. 15A-1414(a) reads as follows:

"After the verdict but not more than 10 days after entry of judgment, the defendant by motion may seek appropriate relief for any error committed during or prior to the trial."

Defendant recognizes in her brief that G.S. 15A-1226(b) authorizes a trial judge in his discretion to permit any party to offer additional evidence at any time prior to verdict. Our case law is to like effect. *See State v. Coffey*, 255 N.C. 293, 121 S.E. 2d 736 (1961); *State v. Perry*, 231 N.C. 467, 57 S.E. 2d 774 (1950). She contends, however, that under G.S. 15A-1226(a) she should have been allowed to present "rebuttal" evidence and the court erred in its failure to afford her that opportunity. Her argument is not persuasive. The record discloses that failure to introduce the pocketbook before resting was a mere inadvertence on the part of the prosecution because the State's witnesses had already identified the pocketbook as the one found in the Quesinberry home and the one defendant claimed as her own. Moreover, she was afforded an opportunity to cross-examine these witnesses concerning the pocketbook and, for that matter, could have offered evidence in her own behalf concerning the pocketbook had she chosen to do so. She waited until three days after trial, verdict and judgment to seek a new trial by way of motion for appropriate relief on the ground that she was not permitted to present rebuttal evidence. The truth is that she could have offered rebuttal evidence had she informed the court of any desire to do so. This view is

strengthened by defense counsel's admission on oral argument that defendant had no rebuttal evidence to offer. Hence, no prejudice could have resulted. Defendant's second assignment of error is overruled.

[4]   On 7 December 1978, after verdict and judgment, defendant filed a motion for appropriate relief pursuant to G.S. 15A-1415(b)(6), contending that during closing arguments defense counsel discovered a large knife inside defendant's pocketbook found in the Quesinberry house. Defense counsel contends this knife represented evidence which was unknown and unavailable to defendant and her counsel until the close of all the evidence and that the knife could not with due diligence have been discovered prior to that time. Defendant argues in support of the motion that the knife could have had a material bearing upon her guilt or innocence and that she should have been granted a new trial "so that proper evaluation of this *new* evidence could be undertaken." Denial of the motion constitutes defendant's third assignment of error.

G.S. 15A-1415 provides in pertinent part that at any time after verdict the defendant by motion may seek appropriate relief upon any of the grounds enumerated in said section. Subsection (b)(6) reads as follows:

"Evidence is available which was unknown or unavailable to the defendant at the time of the trial which could not with due diligence have been discovered or made available at that time, and which has a direct and material bearing upon the guilt or innocence of the defendant."

A motion for a new trial for newly discovered evidence is addressed to the sound discretion of the trial judge and is not subject to review absent a showing of abuse of discretion. *State v. Britt*, 285 N.C. 256, 204 S.E. 2d 817 (1974). "In order for a new trial to be granted on the ground of newly discovered evidence, it must appear by affidavit that (1) the witness or witnesses will give newly discovered evidence; (2) the newly discovered evidence is probably true; (3) the evidence is material, competent and relevant; (4) due diligence was used and proper means were employed to procure the testimony at trial; (5) the newly discovered evidence is not merely cumulative or corroborative; (6) the new evidence does not merely tend to contradict, impeach or discredit

the testimony of a former witness; and (7) the evidence is of such a nature that a different result will probably be reached at a new trial." *State v. Beaver*, 291 N.C. 137, 229 S.E. 2d 179 (1976).

In light of the foregoing legal principles, it is not perceived how the large knife discovered inside defendant's pocketbook during argument of the case affected the verdict or had any bearing on defendant's guilt or innocence. Counsel stated during oral argument in this Court that the jury never saw the knife and never knew it existed. Defendant has not shown that the knife was material, competent or relevant. Defendant has not shown that the knife was not merely corroborative of other testimony. Defendant has not shown that due diligence was used and proper means employed to examine the contents of defendant's pocketbook prior to trial. Nor has defendant shown that evidence concerning the knife found in defendant's pocketbook was of such nature that a different result would probably be reached at a new trial. It necessarily follows that denial of defendant's motion for a new trial on the grounds of newly discovered evidence did not constitute an abuse of discretion. *State v. Beaver, supra.*

Defendant has had a fair trial free from prejudicial error. The verdict and judgment must therefore be upheld.

No error.