STATE OF NORTH CAROLINA v. MARQUETTE ADAMS

No. COA01-1443

(Filed 4 March 2003)

**1. Criminal Law— habitual felon indictment—trial on underlying offense—less than 20 days later**

The trial court did not err in a robbery and assault prosecution by denying defendant's pre-trial motion to continue his trial to a date more than twenty days after his habitual felon indictment where the State dismissed that indictment. There is no statutory language barring trial on the underlying felony charges within twenty days of an habitual felon indictment; moreover, in this case there was no prejudice because defendant was sentenced solely on the substantive charges. N.C.G.S. § 14-7.3.

**2. Assault— box cutter—deadly weapon per se**

The trial court's instruction that a box cutter is a deadly weapon was not plain error in an assault and robbery prosecution. The question of whether the weapon is deadly is one of law when the character of the weapon and its manner of use admit

STATE v. ADAMS

[156 N.C. App. 318 (2003)]

but one conclusion; here, the victim testified that defendant attempted to cut her face with the box cutter and that she covered her face with her hands, suffering cuts which required eight stitches. Moreover, the box cutter was found, admitted into evidence, and observed by the judge and jury.

### 3. Sentencing— prior record points—no prejudicial error

There was no prejudicial error in an assault and robbery sentencing where the court concluded that defendant's prior record level was VI based on 21 prior record points; defendant took issue with one of those points on appeal; and level VI requires only 19 points.

### 4. Constitutional Law— effective assistance of counsel— prior conflicts of interest—no investigation

A robbery and assault defendant did not receive inadequate representation where he alleged that his counsel had not investigated defendant's prior convictions for conflicts of interest in her present representation of defendant, but there was no suggestion as to what the investigation would have revealed or how this would have affected defendant's prior record level or his sentencing.

### 5. Constitutional Law— effective assistance of counsel—jury selection—defense tactics

A robbery and assault defendant did not receive inadequate representation during jury selection where he contended that his counsel neglected to develop certain grounds to challenge jurors, but the State and defendant asked questions concerning those grounds, jurors were excused, and there was no basis for challenging the remaining jurors for cause.

### 6. Constitutional Law— effective assistance of counsel—failure to object—evidence of guilt overwhelming

A robbery and assault defendant did not receive inadequate assistance of counsel where his attorney did not object to certain hearsay statements, but there was such overwhelming evidence of guilt that the admission of the statements did not prejudice defendant.

### 7. Constitutional Law— effective assistance of counsel—not calling witness—not objecting to argument

A robbery and assault defendant did not receive inadequate representation where defense counsel did not call a particular

witness and did not object to the prosecutor's argument that the evidence was uncontroverted. "Uncontroverted" was a fair characterization of the evidence, and defendant did not show that calling the witness would have affected the verdict.

**8. Constitutional Law— effective assistance of counsel—no objection to instruction or sentencing finding**

A robbery and assault defendant did not receive inadequate assistance of counsel where defense counsel did not object to the court instructing the jury that a box cutter is a deadly weapon or did not except to the court's finding during sentencing that all of the elements of the present offense were included in prior convictions. The box cutter instruction was proper and defendant had no reason to object, and defendant's prior record level would not have changed had the alleged sentencing error not occurred.

Appeal by defendant from judgment entered 9 May 2001 by Judge Stafford G. Bullock in Durham County Superior Court. Heard in the Court of Appeals 10 September 2002.

*Attorney General Roy A. Cooper, III, by Assistant Attorney General James M. Stanley, Jr., for the State.*

*Kevin P. Bradley for defendant-appellant.*

HUNTER, Judge.

Marquette Adams ("defendant") appeals from a conviction of robbery with a dangerous weapon and a sentence of 120 to 153 months imprisonment.[1] For the reasons stated herein, we find no error.

The State's evidence tended to show that between 10:30 p.m. and 11:00 p.m. on 7 September 2000, Tracey Michelle Long ("Long") was driving in Durham, North Carolina, and had one of her tires blow out. After Long pulled over and retrieved a jack from her trunk, she saw defendant, who asked Long if she needed help changing the tire. Long responded that she could handle it herself, but defendant insisted on helping her. It took about thirty-five to forty minutes for defendant to change Long's tire and according to Long, she was able to see defendant clearly the entire time.

---

1. Defendant was also convicted of assault with a deadly weapon but is only appealing his conviction of robbery with a dangerous weapon.

Defendant informed Long that he had missed his bus and asked for a ride down the street to his house. Long agreed to give defendant a ride home but told him that she was on her way somewhere and was in a hurry. After telling Long to turn multiple times, defendant instructed Long to pull over. When Long pulled over, defendant reached for her keys that were in the ignition with his left hand and pulled out a box cutter with his right hand. Long fought back as defendant attempted to cut her face. Long sustained cuts on both of her hands while trying to protect her face. Defendant eventually got out of the car and then reached through the sunroof, grabbed Long's chain and continued to try to cut Long. Long subsequently alighted from the vehicle and began running down the street. Defendant chased Long and stated that he was going to kill her. Thereafter, defendant returned to the car and took Long's cell phone.

Long eventually got back in her car and drove up the street to determine which direction defendant had gone. When Long returned to the crime scene, the police were there. After receiving two calls regarding a suspicious person near the crime scene, Jeffrey Cockerham ("Officer Cockerham"), a police officer with the Durham Police Department, found defendant lying in the back seat of a Nissan Maxima station wagon. When he searched the car, Officer Cockerham found Long's gold necklace and cell phone. Officer Cockerham also found a green jacket with blood on it and a hat. In addition, a box cutter was found inside one of defendant's pockets. Long positively identified defendant as the person who attacked her with a box cutter after defendant put on the coat and hat that were found in the car with him. Defendant sustained approximately six cuts on her hands which required eight stitches.

Defendant was charged on 16 October 2000 in true bills of indictment with robbery with a dangerous weapon and assault with a deadly weapon inflicting serious injury. Subsequently, on 30 April 2001, defendant was charged in a true bill of indictment with being an habitual felon. Defendant did not present any evidence at trial. The State dismissed the habitual felon indictment prior to sentencing. A jury found defendant guilty of robbery with a dangerous weapon and assault with a deadly weapon, a lesser included offense of assault with a deadly weapon inflicting serious injury. Defendant appeals.

I.

[1] Defendant initially contends the trial court erred in denying his pre-trial motion to continue his trial to a date more than twenty days

after defendant was charged in a true bill of indictment with habitual felon status. Defendant asserts that the trial court deprived him of a fair trial guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and by Article I, Sections 19, 23, and 24 of the North Carolina Constitution.

"A motion for a continuance is ordinarily addressed to the sound discretion of the trial court, and the ruling will not be disturbed absent a showing of abuse of discretion." *State v. Blakeney*, 352 N.C. 287, 301, 531 S.E.2d 799, 811 (2000), *cert. denied*, 531 U.S. 1117, 148 L. Ed. 2d 780 (2001). However, when a constitutional question is implicated, the court's ruling is fully reviewable on appeal. *State v. Taylor*, 354 N.C. 28, 33, 550 S.E.2d 141, 146 (2001), *cert. denied*, 535 U.S. 934, 152 L. Ed. 2d 221 (2002). Additionally, regardless of whether defendant's motion to continue raises a constitutional issue, a denial of such motion "is grounds for a new trial only when defendant shows both that the denial was erroneous and that he suffered prejudice as a result of the error." *Id.* at 33-34, 550 S.E.2d at 146.

Pursuant to N.C. Gen. Stat. § 14-7.3, "[n]o defendant charged with being an habitual felon in a bill of indictment shall be required to go to trial *on said charge* within 20 days of the finding of a true bill by the grand jury; provided, the defendant may waive this 20-day period." N.C. Gen. Stat. § 14-7.3 (2001) (emphasis added). Defendant made a motion for a continuance under this statute since this case was scheduled for trial on 8 May 2001 and defendant was indicted as an habitual felon on 30 April 2001. However, we note that at trial, the State proceeded only on the underlying felony charges, robbery with a dangerous weapon and assault with a deadly weapon inflicting serious injury. The assistant district attorney handling the case, notified the court that the State was not going to proceed with the habitual felon charge until a later date, if at all. After the jury verdict was announced, the State dismissed defendant's habitual felon indictment and defendant was sentenced solely on the substantive charges against him.

We note that " '[w]here the language of a statute is clear and unambiguous, there is no room for judicial construction and the courts must construe the statute using its plain meaning.' " *State v. Cheek*, 339 N.C. 725, 728, 453 S.E.2d 862, 864 (1995) (quoting *Burgess v. Your House of Raleigh*, 326 N.C. 205, 209, 388 S.E.2d 134, 136 (1990)). The plain meaning of N.C. Gen. Stat. § 14-7.3 is that defendant *may not* be tried on an habitual felon charge within twenty days of being indicted as an habitual felon. There is no lan-

guage in the statute which bars trial of the underlying felony charges within twenty days of the habitual felon indictment. Therefore, we conclude the trial court did not err in denying defendant's motion to continue.

Even if the trial court had erred in its denial of defendant's motion, defendant has failed to show any prejudice as a result of the alleged error. The State dismissed the habitual felon indictment and defendant was sentenced solely on the substantive charges against him. Accordingly, this assignment of error is overruled.

## II.

[2] Defendant next contends the trial court committed plain error by instructing the jury that "[a] box cutter is a deadly weapon." Defendant argues the challenged instruction amounted to a mandatory conclusive presumption which unconstitutionally relieved the State of its burden of proving each element of robbery with a dangerous weapon. This assignment of error is subject to plain error review since defendant failed to object to the challenged instruction. *See* N.C.R. App. P. 10(c)(4). "In order to rise to the level of plain error, the error in the trial court's instructions must be so fundamental that (i) absent the error, the jury probably would have reached a different verdict; or (ii) the error would constitute a miscarriage of justice if not corrected." *State v. Holden,* 346 N.C. 404, 435, 488 S.E.2d 514, 531 (1997).

It is well settled that " '[w]here the alleged deadly weapon and the manner of its use are of such character as to admit of but one conclusion, the question as to whether or not it is deadly . . . *is one of law, and the Court must take the responsibility of so declaring.*' " *State v. Torain,* 316 N.C. 111, 119, 340 S.E.2d 465, 470 (1986) (citations omitted). "An instrument which is likely to produce death or great bodily harm under the circumstances of its use is properly denominated a deadly weapon." *State v. Joyner,* 295 N.C. 55, 64, 243 S.E.2d 367, 373 (1978).

After reviewing the evidence presented in the case *sub judice,* we are convinced that the trial court did not err in instructing the jury that "[a] box cutter is a deadly weapon." Long testified that defendant attempted to cut her face with a box cutter so she covered her face with her hands. Long sustained approximately six cuts on her hands which required eight stitches. In addition, the box cutter, which was found inside one of defendant's pockets shortly after the attack, was admitted into evidence and was observed by the trial judge and the

jury. We hold that the evidence in this case supports the trial judge's instruction that a box cutter is a deadly weapon *per se*. Therefore, we find no error, much less plain error, in the trial court's instruction.

## III.

**[3]** Defendant next assigns plain error to the trial court's sentencing proceeding. The trial court concluded that defendant's prior record level was VI, based upon its finding that defendant had twenty-one prior record points. Level VI is assigned to defendants who have at least nineteen prior record points. N.C. Gen. Stat. § 15A-1340.14(c)(6) (2001). Defendant takes issue with only one of the twenty-one prior record points found by the trial court, based on the trial court's allegedly erroneous finding that all the elements of defendant's present offense were included in a prior offense. *See* N.C. Gen. Stat. § 15A-1340.14(b)(6). However, even assuming that one point was erroneously assessed, this error would be harmless since defendant would still have a prior record level of VI with twenty prior record points. *See State v. Smith*, 139 N.C. App. 209, 533 S.E.2d 518, *appeal dismissed*, 353 N.C. 277, 546 S.E.2d 391 (2000). Accordingly, defendant's assignment of error is overruled.

## IV.

**[4]** Defendant finally claims that his trial counsel provided ineffective assistance, entitling him to a new trial. We disagree.

A defendant's ineffective assistance of counsel claims should often be litigated in a motion for appropriate relief. However, we note that "[ineffective assistance of counsel] claims brought on direct review will be decided on the merits when the cold record reveals that no further investigation is required, i.e., claims that may be developed and argued without such ancillary procedures as the appointment of investigators or an evidentiary hearing." *State v. Fair*, 354 N.C. 131, 166, 557 S.E.2d 500, 524 (2001), *cert. denied*, 535 U.S. 1114, 153 L. Ed. 2d 162 (2002). In the instant case, we will review defendant's ineffective assistance of counsel claims since we are able to determine from the record, without further investigation or an evidentiary hearing, whether these claims have merit.

To successfully assert an ineffective assistance of counsel claim, a defendant must satisfy the following two-prong test:

"First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so

serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, *a trial whose result is reliable.*" (Emphasis added.)

*State v. Braswell*, 312 N.C. 553, 562, 324 S.E.2d 241, 248 (1985) (quoting *Strickland v. Washington*, 466 U.S. 668, 687, 80 L. Ed. 2d 674, 693 (1984)).

Defendant specifically alleges that his appointed counsel "neglected to investigate [defendant's] prior convictions to determine whether her office had any conflict of interest in representing [defendant] in the current case or to determine whether there were any grounds to move for appropriate relief from any of those prior convictions." However, there is no suggestion in defendant's brief or the record as to what, if anything, such an investigation would have revealed or how this alleged failure to make such an investigation affected defendant's prior record level or sentencing.

[5] Defendant next avers that his attorney "neglected to develop any grounds to challenge for cause and neglected to challenge jurors who had been victimized in similar crimes to those being tried and whose long-term employment would likely cause them to view the prosecution's case more favorably than the defense." Our review of the record, however, reveals that the State asked the jurors if they previously had their home or car broken into or had been robbed with a weapon. In addition, counsel for defendant asked the jurors if they had a close family member or a close friend who had been the victim of a crime. The only juror who had been robbed with a weapon was excused by the State for cause. Further, we note that defense counsel exercised two peremptory challenges with respect to one police officer and one former police officer. Defense counsel used all six peremptory challenges allowed by N.C. Gen. Stat. § 15A-1217(b)(1) (2001). We find no basis for defense counsel to have challenged any of the remaining jurors for cause pursuant to N.C. Gen. Stat. § 15A-1212 (2001). We acknowledge that trial counsel are necessarily given wide latitude in matters involving strategic and tactical decisions such as which jurors to accept or strike. *State v. Milano*, 297 N.C. 485, 495, 256 S.E.2d 154, 160 (1979), *overruled on other grounds by State v. Grier*, 307 N.C. 628, 300 S.E.2d 351 (1983). In addition, ineffective assistance of counsel claims are "not intended to promote

judicial second-guessing on questions of strategy . . . ." *Sallie v. North Carolina*, 587 F.2d 636, 640 (4th Cir. 1978). After a thorough review of the record, we conclude defendant has failed to show that his trial counsel's tactics were deficient during jury selection.

[6] Defendant further asserts that his attorney failed to object to inadmissible hearsay statements. Specifically, defendant contends that his trial counsel should have objected when Officer Cockerham testified that while at the crime scene with Long, he received a call about a "suspicious black male looking inside of vehicles attempting to open the doors" near the crime scene. In addition, Officer Cockerham testified, without objection, that he received another call shortly thereafter, in which the caller directed him to the Nissan Maxima station wagon in which defendant was found. Assuming *arguendo* that these statements were hearsay, there was such over-whelming evidence of defendant's guilt that the admission of these statements did not prejudice defendant.

[7] Defendant additionally argues that his trial attorney was ineffective by failing to object to the prosecutor arguing that the evidence was uncontroverted and by failing to call defendant's nephew as a witness. We conclude, however, that "uncontroverted" was a fair characterization of the evidence. Long identified defendant as her assailant, identified the box cutter that defendant used during the robbery and assault, identified the jacket that defendant was wearing, and identified the gold chain and cell phone that defendant had taken from her. Officer Cockerham corroborated Long's testimony. Defendant presented no evidence. The State is allowed to bring it to the jury's attention that a defendant has failed to produce exculpatory evidence or has failed to contradict evidence presented by the State. *State v. Mason*, 317 N.C. 283, 345 S.E.2d 195 (1986). Therefore, defense counsel was not ineffective by failing to object to the prosecutor's accurate statement that the evidence was uncontroverted. In addition, defendant has not shown that calling his nephew as a witness would have affected the jury's verdict, especially considering the overwhelming evidence of defendant's guilt. Further, trial counsel are necessarily given wide latitude on their decisions involving what witnesses to call. *See Milano*, 297 N.C. at 495, 256 S.E.2d at 160.

[8] Defendant next contends that his trial counsel was ineffective by failing to object to the trial court's instruction to the jury that "[a] box cutter is a deadly weapon." As determined previously in section II, however, this instruction was proper and therefore, defense counsel had no reason to object.

**U.S. COLD STORAGE, INC. v. CITY OF LUMBERTON**

[156 N.C. App. 327 (2003)]

Defendant finally claims that his trial counsel was ineffective by failing to except to the trial court's finding that all of the elements of the present offense were included in some prior offense for which defendant was convicted. However, as concluded in section III, had this alleged error not occurred, defendant's prior record level would still have been VI. Therefore, defendant was not prejudiced by his counsel failing to object to the alleged error. For the foregoing reasons, we find no merit in defendant's ineffective assistance of counsel claim.

We conclude defendant received a fair trial, free from prejudicial error.

No error.

Judges WYNN and CALABRIA concur.