STATE OF NORTH CAROLINA v. LARRY WINTON DOYLE, JR.

No. COA03-94

(Filed 18 November 2003)

**1. Homicide— felony murder—motorist's death during flight from robbery—driving at the speed limit—not a break in circumstances**

Defendant's driving at the speed limit for a time between an armed robbery and the beginning of a high speed chase did not separate the subsequent death of a motorist from the robbery and flight. Escape need not be accomplished at high speeds; defendant presented no evidence that he was diverted from his chosen route and his motion to dismiss a first-degree felony murder charge was correctly denied.

**2. Homicide— felony murder—motorist's death during high speed chase—insulating negligence—use of stop sticks foreseeable**

Defendant's requested special instructions on insulating negligence were correctly denied in a felony murder prosecution for the death of a motorist which occurred as defendant avoided stop sticks (devices used by police to puncture automobile tires) while fleeing from an armed robbery. The use of stop sticks was reasonably foreseeable.

**3. Homicide— felony murder—short-form indictment— constitutionality**

The use of a short form indictment for first-degree felony murder was not error.

**4. Constitutional Law— effective assistance of counsel—failure to renew motion to continue**

A defendant charged with multiple crimes including assault, armed robbery, and felony murder was not denied effective assistance of counsel because his counsel did not renew a pretrial motion to continue. There was no evidence that counsel's failure to renew the motion or the lack of additional time prejudiced defendant's case.

Appeal by defendant from judgment entered 9 August 2002 by Judge J. Marlene Hyatt in Haywood County Superior Court. Heard in the Court of Appeals 29 October 2003.

STATE v. DOYLE

[161 N.C. App. 247 (2003)]

*Attorney General Roy Cooper, by Assistant Attorney General Newton G. Pritchett, Jr., for the State.*

*Marilyn G. Ozer, for defendant-appellant.*

TYSON, Judge.

Larry Winton Doyle, Jr. ("defendant") was charged with one count of first-degree felony murder based upon robbery with a dangerous weapon, two counts of assault with a deadly weapon inflicting serious injury, one count of felony speeding to elude law enforcement, one count of kidnapping, one count of larceny of a motor vehicle, one count of reckless driving, one count of driving while license revoked, one count of driving while intoxicated, and one count of speeding in excess of 15 m.p.h. The State dismissed the charges of speeding in excess of 15 m.p.h., reckless driving, larceny of a motor vehicle, driving while license revoked, driving while intoxicated, kidnapping, and one count of assault with a deadly weapon inflicting serious injury. Defendant pled guilty to felony speeding to elude law enforcement. The jury found defendant guilty of first-degree felony murder based upon the felony of robbery with a dangerous weapon. The jury found defendant not guilty on the remaining count of assault with a deadly weapon inflicting serious injury. Defendant was sentenced to life imprisonment without possibility of parole for first-degree felony murder and six to eight months for felony speeding to elude law enforcement. Defendant appeals.

## I. Background

Defendant met Kathy Thompson ("Thompson") when she applied for employment at the restaurant where defendant worked as assistant manager. Defendant and Thompson left Augusta, Georgia in early April 2002, in order for Thompson to avoid going to jail for violating her probation. Defendant and Thompson traveled by bus to Asheville, North Carolina and stayed in motels for several days. On 12 April 2002, defendant purchased a knife. On the morning of 14 April 2002, defendant and Thompson ate at the Olive Garden Restaurant, consumed beer and wine, and left without paying the check. As they were sitting on the curb outside of the mall, they decided to steal a vehicle.

Patricia Cocke ("Cocke") was unloading her shopping cart into her Ford Expedition at the Wal-Mart on Tunnel Road when the defendant grabbed her from behind, held the knife he had purchased

two days earlier against her, and demanded her car keys. Cocke told defendant that the keys were in her purse. Cocke removed the keys from her purse and handed them to defendant. As defendant pushed Cocke away, the knife cut Cocke's hand, which later required eighteen stitches to close the wound. Cocke began screaming that her car was being stolen.

Mary Elizabeth Burns ("Burns") was looking for a parking space, and observed Cocke running towards her screaming, holding her bloody hand. Burns stopped to allow Cocke into her vehicle. Burns heard defendant screaming at her to get out of his way so that he could leave in Cocke's vehicle. Defendant rammed the back right door of Burns' car to move it out of his way. Burns moved her car to allow defendant to leave. Defendant picked up Thompson from the curb where she was sitting with their luggage. The defendant and Thompson proceeded on Interstate 40 West ("Interstate") towards Tennessee.

Officer Scott Hawkins ("Officer Hawkins") was traveling to work around 4:13 p.m., when he received a call about the carjacking of Cocke's vehicle from Wal-Mart's parking lot on Tunnel Road. Around 4:22 p.m., Hawkins spotted the Ford Expedition described in the call, pulled in behind it, but did not activate his lights or siren. The defendant continued to drive at or below the speed limit. Approximately four minutes later, law enforcement back-up vehicles arrived. Blue lights and sirens were activated. Defendant accelerated speed and began leading the police on a high speed chase along the Interstate. As defendant and the pursuing officers approached Exit 24, stop sticks were placed on the Interstate to end the chase. Defendant swerved right to avoid hitting the stop sticks and collided into a Saturn vehicle that had also swerved right to avoid the stop sticks. The passenger in the Saturn vehicle was killed instantly. After the accident, defendant exited the Ford Expedition, jumped the guardrail and ran, but was captured by police officers. Officer Hawkins testified that the time lapse between the robbery of Cocke's vehicle and the fatal collision was approximately thirty minutes.

## II. Issues

The issues in this case are whether the trial court erred: (1) in denying defendant's motion to dismiss the charge of first-degree felony murder; (2) in refusing to instruct the jury on the defendant's requested special jury instruction on insulating acts of negligence; (3) by trying defendant and entering judgment for first-degree murder by

use of the "short-form" indictment; and (4) whether defendant's counsel provided ineffective assistance of counsel. All remaining assignments of error not argued are waived. N.C.R. App. P. 28(b)(6) (2002).

### III. Motion to Dismiss

[1] Defendant assigns as error the denial of his motion to dismiss the charge of first-degree felony murder. Defendant argues that his conviction must be vacated because a break in time, place, and causal relationship occurred between the victim's death and the alleged underlying felony of robbery with a dangerous weapon. We disagree.

"In ruling on a motion to dismiss, the trial court need determine only whether there is substantial evidence of each essential element of the crime and that the defendant is the perpetrator." *State v. Call*, 349 N.C. 382, 417, 508 S.E.2d 496, 518 (1998). Substantial evidence is that amount of relevant evidence necessary to persuade a rational mind to accept a conclusion. *State v. Frogge*, 351 N.C. 576, 584, 528 S.E.2d 893, 899, *cert. denied*, 531 U.S. 994, 148 L. Ed. 2d 459 (2000). Whether substantial evidence exists is not a question of weight, but is a test of the sufficiency of the evidence. *State v. Lucas*, 353 N.C. 568, 581, 548 S.E.2d 712, 721 (2001). The evidence is viewed in the light most advantageous to the State, after drawing all reasonable inferences. *Id.* "Circumstantial evidence may withstand a motion to dismiss and support a conviction even when the evidence does not rule out every hypothesis of innocence." *State v. Stone*, 323 N.C. 447, 452, 373 S.E.2d 430, 433 (1988).

A murder is a felony murder when it is "committed in the perpetration or attempted perpetration of any . . . robbery . . . committed or attempted with the use of a deadly weapon . . . ." N.C. Gen. Stat. § 14-17 (2001). "[A] killing is committed in the perpetration of armed robbery when there is no break in the chain of events between the taking of the victim's property and the force causing the victim's death, so that the taking and the homicide are part of the same series of events, forming one continuous transaction." *State v. Braxton*, 344 N.C. 702, 713, 477 S.E.2d 172, 178 (1996) (quoting *State v. Handy*, 331 N.C. 515, 529, 419 S.E.2d 545, 552 (1990)). Our courts have held that "escape is ordinarily within the *res gestae* of the felony and that a killing committed during escape or flight is ordinarily within the felony-murder rule." *State v. Squire*, 292 N.C. 494, 512, 234 S.E.2d 563, 573 (1977).

STATE v. DOYLE

[161 N.C. App. 247 (2003)]

Defendant argues the killing did not occur during escape or flight from the armed robbery and asserts that he had reached a place of safety by driving on the Interstate at the posted speed limit and before the high-speed chase ended in the death of the victim.

The evidence showed that at approximately 4:00 p.m., defendant robbed Cocke at knife point, stole her vehicle, rammed Burn's car to aid in his escape, and drove at a high speed out of the parking lot toward the Interstate. At approximately 4:13 p.m., Officer Hawkins received a radio dispatch about an armed robbery of a Ford Expedition from Wal-Mart's parking lot. Officer Hawkins spotted defendant driving the stolen Ford Expedition at the posted speed limit at approximately 4:22 p.m. The State contends that defendant was driving the speed limit on the Interstate in order to blend in and avoid attention. The State argues that defendant had not slowed down because he had reached a safe haven. Defendant admitted that he knew he could not out run the police and decided to drive the speed limit to escape toward the Tennessee state line, hoping not to attract attention to himself. Defendant maintained his course of action even when Officer Hawkins pulled in behind him. Once other officers joined Officer Hawkins and activated their lights and sirens, defendant accelerated, leading police on a high speed chase that ended in the victim's death.

Presuming, as defendant argues, that he was initially obeying all traffic laws on the Interstate, defendant was still fleeing to escape from and to avoid arrest for armed robbery. Escape need not be accomplished at high speeds but can be accomplished by driving at or below the speed limit. Approximately ten minutes had elapsed between the time the "be on the lookout" call about the armed robbery was dispatched, until the time Officer Hawkins spotted defendant driving the stolen Ford Expedition. Approximately thirty minutes elapsed between the time of the armed robbery and the collision which killed the passenger in the Saturn.

Defendant presented no evidence that he was diverted or stopped from his chosen route from the site of the robbery to the Tennessee border prior to the collision. The State presented sufficient evidence to show "no break in the chain of events between the taking of the victim's property and the force causing the victim's death, so that the taking and the homicide are part of the same series of events, forming one continuous transaction." *Braxton*, 344 N.C. at 713, 477 S.E.2d at 178. Defendant's assignment of error is overruled.

## IV. Jury Instruction on Insulating Acts of Negligence

**[2]** Defendant contends that the trial court erred by denying defendant's requested special instruction to the jury on insulating acts of negligence. We disagree.

Defendant submitted to the trial court the following written request:

> Second, that while committing robbery with a dangerous weapon, the defendant killed the victim. A killing is committed in the perpetration of a felony for purposes of the felony murder rule where there is no break in the chain of events leading from the initial felony to the act causing death, so that the killing is part of a series of incidents which form one continuous transaction; however[,] the conduct of another person may result in a break in this chain of events.

> And Third, that the defendant's act was a proximate cause of the victim's death. A proximate cause is a real cause, a cause without which the victim's death would not have occurred. The defendant's act need not to have been the only cause, nor the last or nearest cause. It is sufficient if it concurred with some other cause acting at the time which, in combination with it, caused the death of the victim. However, a natural and continuous sequence of causation may be interrupted or broken by the conduct of a second person. This occurs when a second person's conduct was not reasonably foreseeable by the defendant and causes its own natural and continuous sequence which interrupts, breaks, displaces or supersedes the consequences of the defendant's conduct. Under such circumstances, the conduct of the second person not reasonably foreseeable by the defendant would be the sole proximate cause of the killing.

> The burden is not on the defendant to prove that his conduct was insulated by that of another. Rather, the burden is on the State to prove beyond a reasonable doubt that the defendant's act was a proximate cause of the victim's death.

The State also requested the trial court to instruct the jury regarding a continuous transaction and proximate cause. The court's instruction to the jury read as follows:

> Second, that while committing or attempting to commit robbery with a dangerous weapon, the defendant killed the victim. A

STATE v. DOYLE

[161 N.C. App. 247 (2003)]

killing is committed in the perpetration or attempted perpetration of a felony for purposes of the felony murder rule where there is no break in the chain of events leading from the initial felony to the act causing death, so that the killing is part of a series of incidents which form one continuous transaction.

And third, that the defendant's act was a proximate cause of the victim's death. A proximate cause is a real cause, a cause without which the victim's death would not have occurred. The defendant's act need not have been the only cause, nor the last or nearest cause. It is sufficient if it combined with some other cause acting at the time which, in combination with it, caused the death of the victim.

The trial court is required to frame its instructions with the particularity that is necessary to enable the jury to understand and apply the law to the evidence bearing upon the elements of the crime charged. *State v. Weddington*, 329 N.C. 202, 210, 404 S.E.2d 671, 677 (1991). To warrant a conviction for homicide, the State must establish that the act of the accused was a proximate cause of the death. *See State v. Minton*, 234 N.C. 716, 68 S.E.2d 844 (1952). Defendant's actions need not be the sole and only proximate cause of the victim's death to be found criminally liable. *State v. Hollingsworth*, 77 N.C. App. 36, 39, 334 S.E.2d 463, 465 (1985). A showing that the defendant's actions were one of the proximate causes is sufficient. *Id.* To insulate the defendant from criminal liability, the negligence of another must be such as to break the causal chain of defendant's actions. *See State v. Jones*, 353 N.C. 159, 538 S.E.2d 917 (2000).

The evidence shows that the patrolman's deployment of stop sticks did not entirely break the chain of events. Defendant's actions of robbing Cocke and leading the police on a high speed chase along the Interstate was a proximate cause of the collision and victim's death. The trial court's instructions were adequate to inform the jury on the issue of proximate cause and on the issue of continuous transaction.

Presuming, without deciding, that a third party's acts must be reasonably foreseeable to a criminal defendant, the evidence clearly shows that the deployment of the stop sticks by the patrolman was reasonably foreseeable to a defendant who refused to stop after police activated their lights and sirens and who accelerated and led the police on a high speed chase along the Interstate towards the Tennessee border. Defendant testified that he was aware from watch-

ing television and movies that stop sticks are deployed to apprehend criminals who are fleeing from pursuing police officers. This testimony tends to show defendant did or could foresee that the police officers might use this tactic to apprehend him. The trial court did not err by refusing defendant's requested jury instruction. Defendant's assignment of error is overruled.

## V. Short-Form Indictment

[3] Defendant was tried and convicted for first-degree murder under a "short-form" indictment allowed by N.C. Gen. Stat. § 15-144 (2002). Defendant contends that the trial court erred by allowing trial and entering judgment against defendant since the "short-form" indictment only alleged the elements of second-degree murder.

Defendant concedes that our Supreme Court ruled against his position in *State v. Wallace*, 351 N.C. 481, 528 S.E.2d 326, *cert. denied*, 531 U.S. 1018, 148 L. Ed. 2d 498 (2000). Further, this Court has "reviewed over fifty additional decisions in which this issue has been raised and rejected by our Supreme Court and this Court in the last three years. These decisions consistently hold that the short form murder indictment is constitutional." *State v. Amerson*, 158 N.C. App. 543, 581 S.E.2d 832 (citing *State v. Braxton*, 352 N.C. 158, 173-75, 531 S.E.2d 428, 437-38 (2000), *cert. denied*, 531 U.S. 1130, 148 L. Ed. 2d 797 (2001); *Wallace*, 351 N.C. at 504-08, 528 S.E.2d at 341-43). Defendant's assignment of error is overruled.

## VI. Ineffective Assistance of Counsel

[4] Defendant contends that his trial counsel provided defendant with ineffective assistance of counsel by not renewing a pretrial motion to continue.

*State v. Braswell* sets out a two-part test to resolve issues of ineffective assistance of counsel. 312 N.C. 553, 562, 324 S.E.2d 241, 248 (1985).

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, *a trial whose result is reliable.*

*Id.* (quoting *Strickland v. Washington*, 466 U.S. 668, 687, 80 L. Ed. 2d 674, 693 (1984)). The defendant must show a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.*

When a motion for continuance is denied, a defendant must show that "he did not have ample time to confer with counsel and to investigate, prepare and present his defense." *State v. Tunstall*, 334 N.C. 320, 329, 432 S.E.2d 331, 337 (1993). The defendant must show "how his case would have been better prepared had the continuance been granted or that he was materially prejudiced by the denial of his motion." *State v. Covington*, 317 N.C. 127, 130, 343 S.E.2d 524, 526 (1986). Ineffective assistance of counsel claims are "not intended to promote judicial second-guessing on questions of strategy . . . ." *State v. Adams*, 156 N.C. App. 318, 325-26, 576 S.E.2d 377, 383 (2003) (quoting *Sallie v. North Carolina*, 587 F.2d 636, 640 (4th Cir. 1978)).

No evidence shows that counsel's failure to renew this motion or that the lack of additional time prejudiced defendant's case. The record reflects that defendant's counsel was prepared to cross examine the State's witnesses and conduct direct examination of the defendant's witnesses. Defense counsel successfully challenged the introduction of several statements made by defendant while in police custody. The record further shows that defendant was initially charged with twelve crimes and that defense counsel successfully secured dismissal of seven of the twelve charges. Defense counsel also successfully argued to the jury that defendant was not guilty of assault with a deadly weapon inflicting serious injury to Cocke. The jury found defendant not guilty on this charge. The defendant has failed to show that defense counsel's actions were deficient or that this deficiency was prejudicial to the defense in his case. Defendant's assignment of error is overruled.

## VII. Conclusion

Defendant failed to show that the trial court erred in denying his motion to dismiss the first-degree felony murder charge and in denying his requested jury instructions. Defendant failed to present any new arguments or authority in support of his contention that the "short-form" indictment was unconstitutional. Defendant failed to show that defense counsel provided ineffective assistance of counsel.

No error.

Judges McCULLOUGH and BRYANT concur.